JAMES R. WILLIAMS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent HARRIETTE R. WILLIAMS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket Nos. 585-72, 586-72.
United States Tax Court
T.C. Memo 1973-154; 1973 Tax Ct. Memo LEXIS 133; 32 T.C.M. (CCH) 759; T.C.M. (RIA) 73154; July 12, 1973, Filed Alan R. Vogeler, for the petitioners. Ross E. Springer, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: In these consolidated cases, the Commissioner determined deficiencies in the gift tax liabilities of petitioners James R. Williams and Harriette R. Williams as follows: 2 Year
Deficiency James R. Williams
1966
$8,977.50
1967
194.06
Harriette R. Williams
1966
101.25
1967
270.00
We are asked to determine the fair market value of shares of stock of a closely held corporation which were the subjects of certain gifts made during the taxable years in question. FINDINGS OF FACT James R. Williams and Harriette R. Williams are husband and wife and resided in Cincinnati, Ohio at all times herein pertinent. James filed *134 individual gift tax returns for 1966 and 1967 with the district director of internal revenue at Cincinnati; Harriette did not file such a return for 1966 but did file a return for 1967. This case concerns the value of certain gifts of stock of Airway Center, Inc., as follows: On July 20, 1966, James gave 25 shares to Harriette and 30 shares to the James R. Williams Trust No. 2 for Patricia Mary Ann Williams, petitioners' daughter; on September 1, 1966, James gave 221 shares to Harriette; on December 18, 1967, James gave another 21 shares to Harriette. The issue in the case of Harriette is the outcome of her consent to have the gifts made by James to third 3 parties in 1966 considered as made one-half by her husband and one-half by her. Harriette made gifts in 1967 not involving Airway Center stock. The resolution of the stock valuation issue will automatically bind Harriette as to her gift tax liability both for 1966 and 1967. The outstanding capital stock of Airway Center, Inc., prior to the gifts of July 20, 1966, consisted of 750 shares of common stock owned by the following: Stockholder
Shares James R. Williams
450
Richard W. Grote
100
Thomas D. Grote
100
Helen D. Williams
10
William J. Williams Trust for Thomas Luke Williams
15
Helen D. Williams for Carol Ann Williams
15
Helen D. Williams Custodian for Sharon Mary Williams
15
W. J. Williams - Helen DeC. Williams Trust for Mary Frances Williams, Irrevocable Trust dated 7/10/63
15
William J. Williams and Helen D. Williams Trustees for William J. Williams, Jr., Irrevocable Trust dated 8/4/64
15
William J. Williams and Helen DeC. Willaims Trustees for Richard F. Williams, Irrevocable Trust dated 11/26/65
15
Total
750
*135 4 Airway Center, Inc. was organized under the laws of Ohio in 1958. It has since operated a shopping center in Dayton, Ohio and, since 1965, a car wash concession located on the premises of the center. From the date of incorporation through 1967, there have been no sales of any of the outstanding 750 shares. Shortly after formation, the corporation bought the land on which it built the shopping center for $360,000. The bulk of the corporation's revenues came from rent derived from leases of the various buildings in the center to retailers and businesses. Airway's tenants include J. C. Penney, S. S. Kresge, W. T. Grant Co., and Firestone Tire & Rubber Co. There are about 30 tenants. In 1966 and 1967 approximately 11,000 sq. ft. of the land was still undergoing development. Airway Center is a strip shopping center and is to be distinguished from modern mall-type centers. During the corporate fiscal year ending September 30, 1965, petitioner James Williams sold a family yacht docked in Bal Harbour, Florida to Airway Center, Inc. On the corporate income tax returns for 1965, 1966 and 1967, the corporation reported gross income from chartering of the 5 yacht in the *136 amounts of $13,930.33, $22,706.91, and $18,325 but sustained losses attributable to the craft in each of those years in the amounts of $15,309.31, $10,193.20 and $14,180.02. During the fiscal years 1965-1967, petitioner James Williams or members of his family used the yacht more than 50 percent of the total lease time. The officers of Airway Center, Inc. during 1965, 1966, and 1967 were R. W. Grote, T. D. Grote, W. J. Williams, J. R. Williams and Harriette R. Williams, except that Harriette was an officer only in 1966 and 1967. All the officers served part-time. The directors of the corporation included R. W. Grote and T. D. Grote. Gross revenue of the corporation, excluding charter boat receipts, for the fiscal years 1964-1967 is as follows: Year
Gross Revenue 1964
$325,069
1965
344,297
1966
382,139
1967
407,523
Operating expenses consisting of management expenses including payroll, payroll taxes, amortized lease expense, shopping center management fees, supplies, etc., and exteriro maintenance, insurance, and real estate taxes were for each of those years 6 $71,698, $91,172, $107,087, and $122,750. The foregoing amounts do not include expenses *137 attributable to the charter boat. Officers' salaries, directors' fees and gifts to employees were as follows: 1964
1965
1966
1967 Officers' salaries
-0-
$3,600
$9,050
$15,000
Directors' fees
-0-
2,000
2,000
2,000
Gifts
-0-
25
75
95
Total
-0-
$5,625
$11,125
$17,095
Annual 3 percent straightline depreciation of shopping center buildings and improvements was approximately $70,000. Annual depreciation of the car wash building and equipment was approximately $2,000. Mortgage interest expense incurred in the years 1964 through 1967 was $141,575.33, $139.713.16, $134,296.50, and $126,984.71, respectively. Municipal and Federal income taxes remitted by the corporation during those years were zero in 1964, $2.38 in 1965, $3,991 in 1966 and $14,390 in 1967. James Williams included with his gift tax return for 1966 a written appraisal of the fair market value of the capital stock of Airway Center, Inc. prepared by the Cincinnati C.P.A. firm Haskins & Sells. The report rendered a value of $200 7 per share, based on a weighted average of earnings per share capitalized at 10 percent and book value per share. In his notice of deficiency, *138 the Commissioner determined that the fair market value of the stock on all dates when shares were given was $500 per share. In connection with the trial of the consolidated cases herein the Commissioner submitted an expert appraisal of the stock giving per share values of $775 for the 1966 gifts and $980 for the 1967 gift. Both the report of Haskins & Sells and that of the Commissioner's expert allowed a discount of 15 percent for lack of marketability of the stock in reaching the final values. The Commissioner's expert based his valuation on cost replacement value and on capitalization of the corporate income without reduction for officers' salaries, director's fees, Federal and state employment taxes attributable thereto, gifts, interest expense, depreciation, income taxes, or expenses attributable to the charter boat; he excluded revenue generated by the charter boat. He used a capitalization rate of 9 percent for 1966 and 9.5 percent for 1967. ULTIMATE FINDING The fair market value of Airway Center, Inc. capital stock given by petitioners was no less than $500 per share for the 1966 gifts and no less than $500 per share for the 1967 gift. 8 OPINION *139 Section 2512[1] provides that the value of gifts of property shall be considered the value of the property on the date of the gift. Since the valuation of the stock of a closely held corporation is here involved, and there is no readily available market in which shares of the stock trades, there is no direct answer to the question of valuation. Section 25.2512-2(f), Gift Tax Regulations, directs our attention to such determinants of value as prospective earning power and dividend-paying capacity, the enterprise's net worth and other relevant factors such as goodwill, economic outlook of the industry, etc. We note at the outset that the conflicting appraisals offered by the parties have some important points in common. First, both place heavy reliance on the capitalization of income approach to valuation, and by income they have reference to the income of the underlying assets of Airway Center, Inc. Cf. Rev. Rul. 59-60, 1959-1 C.B. 237. The reports are in virtual agreement that the risks of operating a shopping 9 center are such as to attract investment capital at a captalization rate in the narrow range of 9 percent *140 to 10 percent. Second, there is substantial agreement that 15 percent is a proper discount for the lack of marketability of the stock and for the fact that a minority share of the enterprise was transferred. We will not substitute a different view as to these matters. Further, we think that, as Rev. Rul. 59-60, supra indicates, the capitalization of income approach should be our primary concern. We are satisfied from our independent review of the facts relating to the net income of Airway Center that the Commissioner's value of $500 for both taxable years was generous to petitioners. The Commissioner's expert returned much higher appraisals in part due to his recasting of officers' compensation as return on equity and due to his subtracting from expenses mortgage interest, income taxes and depreciation. These adjustments had the effect of increasing the net income of the corporation and petitioners have criticized this. We do not deny that the deletion of some of these items, particularly income taxes and interest, is a controversial practice. [2] 10 See *141 Herwitz, Business Planning (1966), pp. 27-28. Moreover, we see nothing unusual or excessive about the compensation of the officers and directors of Airway Center. Allowing all these items of expense, however, would not reduce net income sufficiently to bring the per share value, based on Haskins & Sells 10 percent factor, below $500. To bring the value below $500, the expenses attributable to the charter boat would have to be brought into the computation, and at this we draw the line. The Commissioner's expert deleted both receipts and expenses of the charter boat from his calculation of net income, and petitioners have criticized this also. The yacht produced substantial losses during 1964-1967, and has never been profitable. We doubt that a willing purchaser of the underlying assets of Airway Center would have included the Florida yacht in his offer to buy. The boat was acquired from the Williams family, which made use of it for personal purposes more than half of its income producing time even after the corporation owned it. The restoring *142 to income of the operating losses of the boat was therefore proper. Having determined by the income approach that the Commissioner's per share value of $500 is not excessive, we need not 11 consider whether another method of valuation would yield a lower value. We think in any case that proper allowance has been made for this in the substantial margin between the values arrived at through the income approach, and $500, the value which the Commissioner determined. Decisions will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified. ↩
2. The Commissioner's expert claimed that depreciation and interest, at least, were accounted for in the overall capitalization rate. ↩